v. Jonathan Wayne Daniels, No. 22-10408. Ms. Cain. Good morning. Good morning. Your Honors, may it please the Court, Sarah Cain, Assistant Federal Public Defender on behalf of Jonathan Daniels, who is the defendant in the District Court and the appellant at this time. Your Honors, I'd like to start by addressing the jury instructions that were raised on appeal and also proposed by the Defense Counsel before trial and during trial. I'd like to start by pointing out to Your Honors, in case you were not aware, that this Court's pattern instruction has not been substantively amended since at least 1985. That's the oldest version of the pattern of the instructions that I could find available in our offices, and a lot has changed since then. This Court also has a longstanding policy disfavoring expert testimony as to eyewitness identifications, and that leaves defendants like Mr. Daniels in sometimes a difficult position. Mr. Daniels faced eight eyewitnesses and ten Hobbs Act robbery counts, and he had no chance at acquittal unless he could get the jury to have reason to doubt some or all of the eyewitness identification testimony against him. As many defendants do, not all defendants are facing ten Hobbs Act robbery counts, but Mr. Daniels asked the District Court to consider a more comprehensive jury instruction. This instruction was based on the Third Circuit pattern instruction on eyewitness identification testimony, and there is no argument from the government that the pattern or the proposed instruction was not a correct statement of law. That's, of course, the first prong of the standard. So Mr. Daniels asked for a more comprehensive eyewitness instruction. He argued that the Eleventh Circuit's instruction was outdated. The District Court was under the impression that this Court had recently approved the pattern eyewitness instruction. That is true. However, it has not substantively been amended for most of my life. I will be 40 in March. Mr. Daniels specifically... Here the District Court didn't give the pattern without any modification, right? That's correct, Your Honor. The District Court ultimately added two questions of the several questions that Mr. Daniels requested. Of course, that's important. That shows the District Court understood that the pattern, that the instructions should respond to the facts of the case, but our position is that the District Court did not go far enough and that the instructions that were given were missing some important instructions that were requested, starting with whether the witness made the identification while exposed to the suggestive influence of others and whether the witness identified the defendant in conditions that created the possibility that he was involved in the crime. Relatedly, generally, if the identification was made under circumstances that may have influenced... Let me ask you a question. Yes, Your Honor. You've read from what you had asked for, the particular instruction. He included, beyond the pattern, instructions about stress and instructions about race, which were particularly salient in the context of the facts here, but I want to ask you about what you say he didn't include. He did not include the language you proposed, quote, whether the witness made the identification while exposed to the suggestive influence of others, semicolon, whether the witness identified the defendant in conditions that created the impression that he was involved in the crime. That's what you asked. What he did tell the jury to do, among other things, was to, quote, consider the circumstances of the identification of the defendant, such as the way the defendant was presented to the witness for identification and the length of time. Why wasn't that sufficient? It wasn't the same language, but it sure was covering the same terrain. Your Honor, I think it goes to the level of generality that would be helpful to a jury in this case. The jury in this case was faced with a large quantity, not to be confused with high-quality evidence, and they had to parse through it in deliberations, you know, without transcripts, without the benefit of all the record that we have here on appeal. So Mr. Daniels was faced with asking the jury to carefully parse through several days of testimony to remember which witnesses testified about what. And more specific instructions, the instructions he requested, one would have assisted the jury in remembering what exactly is he talking about. And the other really important factor that isn't included anywhere in the pattern instructions is the word suggestive, right, the suggestive influence of others. And then whether the witness identified the defendant in conditions that created the impression he was involved in the crime. So basically the pattern that was given tells jurors you may consider the circumstances of the identification, right, including the way the witness was presented, the defendant was presented to the witness. Those are very... And the length of time. Yes. And those are extremely general. And I think it asks too much of jurors to know what is it about an identification that can make it problematic? What is it that makes an identification unreasonable or unreliable? And I think the court has to recognize that jurors do not go into trials, on average these are lay people, they do not enter a trial with the basic understanding that we have through decades of research, which is that eyewitness testimony can be unreliable. But don't you have, isn't that the point of a cross-examination and impeachment of a witness? If you have a witness on the stand and you're asking them to look at a person and you ask them if they wear glasses, were they wearing their glasses, isn't that the point of having a cross-examination? From the defendant's perspective, cross-examination of course should cover those questions and the hope in cross-examination is that the jury is paying attention and heeds the answers and gathers what you want them to gather from a cross-examination, but there is no equivalent to the court's instructions on the law. And the instructions on the law did not suggest in any way that an eyewitness testimony can be unreliable because of the suggestive influence of say a police officer who was involved in the investigation, who was also involved in the lineup as we had here. Can I run you through the language that the District Court didn't include and sort of get you to tell me where you think they rank in terms of importance? So the first one is the introductory line that this is one of the most important issues in the case. That could not have possibly have harmed you, right? I mean everybody knew that identification was the important issue in the case. Everybody fought about it. That's what a large amount of the testimony was about. Who was this person who was committing or persons who were committing these acts? You could not have suffered, I think, you could not have suffered harm from the exclusion of that introductory line. Am I wrong? I think that it is not the most prejudicial aspect of what was not included and I did not raise that as a basis for relief, that particular line for a reason. I think there is, it is useful to the defendant to bring the jury's attention to the eyewitness testimony. In this case, Mr. Daniels did not have the chance at acquittal for virtually any count with the exception of count seven for the reasons briefed. If the jury didn't hone in on the issues with the eyewitness testimony, I don't, I think it could have helped, but you're right, your honor, it was not the most prejudicial thing that was left out. Richard, give me two or three of the ones that you think were the most harmful to you. Sure. The ones that I've listed, so the identification while exposed to the suggestive influence of others, whether the witness identified the defendant in conditions that created the impression he was involved in the crime, whether the witness... and what he gave, and we agree that he gave it in more general terms, and your argument is it should have been more potent if it were given with great specificity. But what about the, what about the other two? Because I read that there are two others that you, that you think are a big deal. Yes. So whether the witness gave a description of the person who committed the crime and if so, how the witness's description of the person who committed the crime compares to the defendant, there is no mention of a witness's prior description in the instruction that was given or the pattern instruction, and the defense asked for that, and a couple of witnesses gave descriptions that were inconsistent with either the suspect in the video. That's the one where the district court said it wasn't relevant, right? Yes, because the trial attorney at the time mentioned one witness's description of the defendant having a line, a gold line in his tooth, and the court focused on the fact that the defendant had not proved that Mr. Daniels did not have a gold line in his tooth. However, Mr. Daniels has no burden. Mr. Daniels certainly should have been able to stand up at closing and say the government didn't present any evidence that Mr. Daniels has a gold line in his tooth. He's been sitting here this whole time. Why didn't they do that? And there was no instruction pointing the jury to consider that witness's prior description, which there was no evidence to confirm. And then the other one that you cited was how closely the witness was paying attention to the person. What the district court did was it was covered arguably by the instruction asking, quote, how much time the witness had to observe the person. Is there any real difference there? I think there is, Your Honor. Someone can have... Pretty subtle. It is subtle, and that's the point. So jurors, again, are laypeople, and they're not accustomed to evaluating eyewitness testimony. And the way to present a defense on eyewitness identification testimony is to get the jury to think in nuanced ways about ways in which that testimony can be unreliable. And someone can have an hour, an opportunity of an hour, to view a suspect but be on their phone the whole time. And that means they did not have the attention, they were not paying attention to the suspect, and therefore their identification... Let me ask you, you've really gone over the time. You can use it any way you want, but perhaps you want to at least briefly mention the other issues so that he can respond if we have any inquiry. Otherwise, we really wouldn't address it at all today and in court. Yes, Your Honor. I wanted to point out as to count seven that the sentencing court did find it sentencing, that the government and the government agreed at sentencing, conceded that they did not prove by a preponderance of the evidence that a firearm was involved in any of the counts. And the parties in the district court agreed that the only thing that could be proved was the possession of a dangerous weapon as defined by the guidelines by a preponderance of the evidence. I know I'm out of time, so I appreciate it. All right, Ms. Cain, thank you. You've saved your full time for rebuttal. Mr. Keller. Good morning, Your Honors. Zachary Keller on and they're prone to sprees. That chaos and those sprees lead to trials, and then those trials lead to appeals like King in 2014, like Bowers in 2016, like Pendergrass in 2021, and like this one here today before you, where the government proved up a spree of robberies, each one, and then connected the dots. This Court has affirmed those convictions time and again, and this is what my brief is laying out, is that this case is no different, that the issues before you are just the greatest hits of the last decade of robbery trials and robbery appeals that this Court has decided. So to start with the jury instructions, since I know that you all spent a lot of time on that, really what we have here is a Court that went above and beyond anything that's in any of the case law that is before your 2014 published case. There you had an issue of cross-racial identification where the judge just used the pattern. The judge said, nah, I don't think I'm going to include even that, and that was still enough. You have unpublished cases like Ayala, which I cite, where the judge didn't even want to use the pattern at all and just didn't, and the Court found that all the other instructions, for example, the credibility of witness instruction, actually already cover this eyewitness identification. So counsel, the other side is really fighting uphill here compared to something like a duress instruction where it's really key to what they're doing and they can't mount a defense without it. Here we're talking about a very nuanced type of instruction that this Court has found time and again is not required at the level of specificity that defendants are asking for. Here you have 10 transcript pages in the charge conference talking about, laboring over, this instruction to come to what the judge did, which was to go, again, above and beyond what these other courts have done before. He included racial bias and he included... Not racial bias. Or, I'm sorry, the ability to identify whether having race, factoring in race in the eyewitness identification might have caused someone to be confused. Is that fair, Your Honor? I'm not asking you to give or carry. I just don't think the instruction was on bias. It was on the purported difficulty of cross-racial identification. That's the way I see the change to the pattern. Yes, Your Honor. Fair enough. So the bottom line, though, ends up being that here we have an instruction that ends up covering everything and I laid that out in my brief and so our instruction does enough. In fact, it does more than enough. And if there are no questions on the instruction, I can move... No, you should address Ms. Cain's points that in the context, every case is the same and every case is different when it comes to Hobbs Act robberies. They have a lot of similarities. They sometimes follow similar patterns. But factually, they're not all exactly the same and jury instructions probably can and should be tailored to the specific facts in a given case. So one of the arguments that Ms. Cain makes is that the jury and the proposed revisions dealing with suggestiveness and prior identification were particularly important here. So why don't you take those two proposed changes and talk to us about them? Yes, Your Honor. And our position is that those were substantially covered and we argue this in page 40 of our brief, that they were substantially covered by saying you may consider the circumstances. Saying such as, here's a non-exhaustive list of things you should consider. This is not just a two-line instruction. This is a fulsome discussion of how the jurors should consider someone's eyewitness identification during trial. So that's kind of point one as far as our position on this and why this court should affirm that instruction is because when the court is saying you can consider the circumstances, how much time did the witness have to observe, even in the credibility instruction when it talks about, so a different instruction, it talks about did the person accurately observe what was going on during the identification, that this stuff is all getting at this issue. Now, it's true that the court doesn't use the specific line-by-line instruction, the four-page instruction that the defense proposed, but the idea and what the court has to do under the law is to capture that in the course of its own instruction. It's not bound to just use that same wording. So that's point one. And then point two is that under the King three-part, you know, three-factor examination and it's not just King, it's going back, that you also have to show prejudice to the defense and our position is that there is no prejudice to their ability to argue at closing these issues. Again, this is not like a duress instruction where they really need that in order to make the case at closing. This is something totally different. This is something where they can and they did argue at closing, here's why you shouldn't believe these eyewitness identifications. They had that. They had their chance at that. And part of what this case law is doing is every lawyer worth his or her salt wants that argument buttressed by a jury instruction that says, if you believe me on what the evidence showed, here's a jury instruction that supports what I'm telling you to do with your verdict at the end of the day. Yes, Your Honor. And every defense lawyer wants a second bite at the apple at the circuit court of appeals to say, we shouldn't, you know, send it back. They should have to give every single word, but that's just not what the law is. So while I totally appreciate that the defense wants that, that's not what's required and that's what's in all the law that I laid out in my brief. Let me sharpen the point a little bit with a question. Ms. Cain argues that under the circumstances of this case, eyewitness identification was essential and you had some instances where you had a clear and easy identification. And in other circumstances, the proofs were more circumstantial. In this case, not only do you have the claim about the instruction quote, whether the witness made the identification while exposed to the suggestive influence of others, she also argues as a matter of evidence in the case that with respect to count 10, Detective Hyatt's testimony, uh, that he showed the victim, Kazza DeVal, a refreshing picture under circumstances that were arguably wholly improper and exceedingly suggestive. And so that it wasn't just as a general matter where there were 10 separate robberies and identification was so essential. In this case, it was actually evidence of suggestive taint to the photo array shown. There's no question that what the detective did in that case would have been error, is there? Well, Judge Marcus and King, for example, I believe there was a motion to suppress the lineup and that would have been one remedy they could have pursued. But here with the instructions, the jury instructions, this stuff is still all covered by what it is. I understand that, but my question was more particular. With regard to the testimony of Detective Hyatt, and help me if I have the facts wrong, the victim teller was shown a photo spread of six pictures, one of which included the defendant and the other five did not. Do I have that right? Yes, Your Honor. And the detective said, can you pick out the guy who robbed you that day from the six pictures? And she said, I really can't be sure. And she looked and she looked and I can't be sure. And then he says, okay, let me show you this seventh picture. And it's a picture of a still taken from the video of the robbery. And it shows the perpetrator of the crime on the day in question. And he also says, that's the guy, this picture is the guy who robbed you that day. Does that refresh your recollection? And she looks and she looks and she puts it down and he takes it away and he says, now go back to the six. You recognize the guy who robbed you that day? And she said, oh yeah, this one here. Is that what happened? Is that an accurate recitation of the photo spread process in this case for count 10? Yes, Your Honor. I believe so. Was there not error in that? I'm not suggesting it was fatal. I'm not suggesting it was reversible, perhaps, but it was error, wasn't it? For the, for the photo spread to have been conducted in that way. Your Honor, it may have been error. We didn't brief it and I don't want to commit us to that, but I will say the reason we know all this stuff that you just recounted is because it's on the record. It was all for the jury to consider and it was all for the defense to argue at closing. I guess my question is, based on that predicate, didn't the request become a little bit more persuasive and potent under the circumstances of this case? That is to say, with regard to using the language, whether the witness made the identification while exposed to the suggestive influence of others. Again, Your Honor. It sort of rang a little sharper and a little clearer, I think is the thrust of her point, in the context of this very case. And it's really not obvious to me, frankly, that that is something, and maybe it's unusual, but the fact that he says this is a picture from the robbery, that's not him saying, by the way, this is also person number three in the line. So that would be something that's just not obvious. Of course, I think that's right, but you have more. The facts went beyond that. The facts included that she was shown the six and she says, I can't recognize the robber. And the robber was one of the six. And then you come back with a picture and say, ain't that the guy? That's the guy who did the robbery. Now go back and look again. And I don't mean to make too much of it, but I think her argument about the particular need for the instruction was pegged very precisely to the conduct in this case of that agent with regard to that particular identification. And we agree that there's an issue, but the problem for the defense is that that is not the end of the argument. So after that, you have to look at the rest of the factors and say, okay, so we do need to cover this thing. Now, what do we have in the instructions? Does it already substantially cover it? And our position is that it doesn't. Which is the best part of the instruction given that covers suggestiveness? You may also consider the circumstances of the identification of the defendant, such as the way the defendant was presented to the witness for identification and length of time. That would be our position is that that substantially covers. There is, I mean, Judge Marcus was getting at this in his usual erudite way, but the more direct way of asking you the question is whether or not there's a possibility that the failure to give that portion of the requested instruction was prejudicial as to one of the counts of conviction and maybe not the others. And this is assuming that you're saying if it weren't already covered. No, I'm not assuming anything. I'm not assuming anything. Because again, our position is that it is covered by that, but even then we would say there's no prejudice, no prejudice that would rise to the level under that three-factor test of requiring reversal. Because again, and this is in the case law, that in a situation like this, as opposed to something like a duress instruction, for example, the defense had every chance and they did argue all of this at closing. That's what I want to ask you about. The defendant's counsel was not impeded in any way from arguing just that in closing argument, that this photo array and this process was suggestive improperly. Wasn't that argument made? I believe it was made at closing. That specific argument, I believe, was made. There's nothing to stop them from making that, certainly. No, no, I understand that, but I just wanted you to refresh my recollection. It was made, was it not? I believe it was, Your Honor, but I would really need to check the record to be 100% on that. So if there are no further questions on the jury instructions, I would just use the rest of my time to speak briefly about the final point that Ms. Cain brought up with respect to sufficiency. And that's just to say that although there's this whole talk about, well, there was the dangerous weapon versus a firearm and the enhancements and such, there's no need to prove that a gun was used in a robbery. The fact is that when you watch that video, Exhibit 70B, you'll see what happened. Someone walked up, pulled something out of there. It looks like a gun. It's got a silver top just like at least four of the other pictures that are still frames. Looks like a gun. And then the cashier did what you do. He was in a pizza. He walks over to his cash register. He empties it out, goes and empties out the other one. So it's really that simple, that there's no requirement for a gun to be used and that clearly, when you watch the video, 70B, that something happened there that led the cashier to empty his register and close the store down. So with that, I'm out of time. And unless there are any further questions, I would ask that y'all affirm the convictions on all fronts. All right, Mr. Keller. Thank you very much. Ms. Cain, can I ask you a question at the outset? Of course. Was not counsel for the defense free to argue based on what the court said to consider the evidence, such as the way the defendant was presented to the witness for identification and the length of time, to use that very instruction and say to the jury, here's what the court's getting at. Take a look at the identification process surrounding this particular count and the conduct of Defendant Hyatt. This was wholly suggestive, et cetera, et cetera, et cetera, from what he said. Have I missed something here or was there any impediment to making that argument using this instruction as the court gave it? Counsel was allowed to and did present a closing argument on every issue in the identification testimony, including the issues that you're asking about. And counsel attempted to do that as vigorously as possible. That's counsel's job. The instruction that's given, so the jury was repeatedly told that counsel's arguments are not law. They were actually told that again during their deliberations when they asked for transcripts of the closing arguments. Rather than giving them those transcripts, which the court does not have to produce, they were told again that counsel's arguments are not law. So I would bring your honors back to the issue that the instructions did not even hint, did not suggest. Can I ask you a question though? I know that the witnesses, the identification by the witnesses was obviously a key component in this case in terms of the evidence that was presented by the government. But that was not the only evidence presented by the government. There was evidence also in the surveillance videos. There were surveillance videos were shown. But the surveillance videos also showed the individual who committed the robberies wearing very distinctive red shoes and carrying a red umbrella. And was not this evidence presented to the jury. And in fact, it was also testified to at the trial that the red shoes and the red umbrella were found in Mr. Daniel's car. Yes, your honor. There was other evidence of guilt. It was not just witness identification? No, your honor. It was not just eyewitness and identification. The issue as to the instructions is the focus is from our perspective, whether the failure to give the instruction substantially impaired the defendant's ability to present an effective defense. And an effective defense includes in this case would have included specific instructions as to the suggestiveness, for example, of Casa Duvall's identification. I will point out, your honors, that Detective Hyatt did not just show a still image of the robbery. He showed two images of the robbery. He told the jury that that image was Jonathan Wayne Daniels, which as we argued in the briefs, was an obviously improper identification without foundation. And Ms. Casa Duvall denied that that occurred. Mr. Hyatt, Detective Hyatt, excuse me, was also involved in the investigation and he was involved in the identification procedure, which he acknowledged was contrary to his department's procedures. It's also likely contrary to Florida law. And the jury was not given an instruction that an identification procedure can be suggestive. The jury was not given an instruction, and it's just sort of panning out, even to consider eyewitness identification with care or concern or scrutiny. Your honors are familiar with the other instructions in general. They do, such as the pattern instruction and the instruction given in this case as to the confession of a defendant. The words care and concern or scrutiny are included in those instructions and there's nothing in this eyewitness identification instruction that asks the jury to consider the suggestiveness of an identification or to take great care or scrutiny when looking at eyewitness identifications. It's just too general for this case. I see I have 20 seconds left. I want to point out that we disagree with the government's characterization of these instructions as a fulsome discussion on the issues of identification. And there was this was the theory of defense. So when the government says this, there was no prejudice to the defense, the very theory, the only way Mr. Daniels was going to be acquitted was if the jury questioned the eyewitness identification testimony. And that is as to any count other than count seven. I see that my time is up and I have a question. You're on my time, so don't worry about it. It's an issue you raised in your brief but was not addressed in argument, but I was curious about it. And it covered the claim that the district court's upward variance on sentence was substantively unreasonable. And there's one particular thing I want to ask about it. Under the guidelines, you would start with the base offense level of 20, you'd add for brandishing a weapon, and then you'd get to what I want to ask you about. The guidelines are very interesting. What they do is they add an additional point for each additional robbery. So if at the time of sentence there were two robberies rather than one and the jury returned the verdict of guilty beyond a reasonable doubt, you would normally add two levels, two points for the two robberies. If there were three robberies, you'd add three. If there were five robberies, you would add five. And at that point, the guidelines stop. So if there was a sixth robbery, you add nothing. If there was a tenth robbery, you'd add nothing. If there were 16 robberies, you would add nothing. Reasons unclear, the Sentencing Commission, when they fashioned the guidelines, stopped at five. Here there were ten. Would that not be a reasonable circumstance for a judge to vary upward and say, I'm going above the range because there were ten robberies, not five, and the guidelines only tagged them with five? It was a circumstance not considered by the Commission, and I think it's fair and appropriate to consider it. He did that here. Why would that be substantively unreasonable? Your Honor, I'm not sure that scenario would be substantively unreasonable. The reason that I raised substantive unreasonableness in this appeal was based on the argument that some of his counts should be vacated and that if that were true, then his sentence would be substantively unreasonable. So if Your Honor, some of his counts should be vacated, that makes his 180-month sentence substantively unreasonable because the district court fashioned it based on how many additional counts he had on top of five. By the same token, then, I take it you would agree as to the substantive unreasonableness claim, if the court were to sustain all ten of the convictions, then that moots out the last issue? Yes. Thank you. Thank you. All right, thank you both very much.